IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Johnnie Cordero, | ) | C/A No. 3:11-2502-JFA-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| The City of Columbia, South Carolina; Joseph | ) | **REPORT AND RECOMMENDATION** |
| H. Timmons, III, *individually and in his* | ) | |
| *official capacity as Risk Manager of the City of* | ) | |
| *Columbia South Carolina, a/k/a Chip*; Hattie | ) | |
| M. Bing, *individually and in her official* | ) | |
| *capacity as Deputy Director of the City of* | ) | |
| *Columbia Department of Parks and* | ) | |
| *Recreation*; S. Alison Baker, *individually and* | ) | |
| *in his official capacity as Senior Assistant City* | ) | |
| *Manager and Director of the Department of* | ) | |
| *Parks and Recreation of the City of Columbia* | ) | |
| *South Carolina*; Jacque Gilliam, *individually*; | ) | |
| Pamela Benjamin, *in her official capacity as* | ) | |
| *Director of Human Resources for the City of* | ) | |
| *Columbia South Carolina*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The plaintiff, Johnnie Cordero ("Cordero"), filed this action pursuant to 42 U.S.C. §§ 1983

and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., against the named

defendants.  This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule

73.02(B)(2) DSC for a Report and Recommendation on a motion for summary judgment filed by all

defendants with the exception of Defendant Gilliam.  (ECF No. 82.)  Pursuant to Roseboro v.

Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Cordero of the summary judgment and

dismissal procedures and the possible consequences if he failed to respond adequately to the

defendants' motion. (ECF No. 83.) Cordero filed a response in opposition to the defendants'

motion (ECF No. 92; Additional Attachments, ECF No. 93) to which the defendants replied (ECF

No. 95). Also pending before the court is Cordero's motion for default judgment as to Defendant

Gilliam (ECF No. 38), to which the other defendants responded (ECF No. 39). Having reviewed the

parties' submissions and the applicable law, the court concludes that the defendants' motion for

summary judgment should be granted and Cordero's motion for default judgment should be denied.

## BACKGROUND

The following facts are either undisputed or are viewed in the light most favorable to

Cordero, to the extent they are supported by evidence in the record. Cordero, who has a federal

felony criminal conviction, has worked off and on for the City of Columbia since 2004. He was

recruited through the City's Work Initiative Program (WIP), through which the City trains former

criminal offenders following service of their sentences and teaches them certain job skills. Cordero

was involved in a work related traffic accident on June 29, 2005. On that same date, he was required

to submit to a post-accident drug test, which he failed. Cordero's employment was terminated, but

following Cordero's completion of the City's requirements for reemployment, the City again hired

him effective October 28, 2005. At that time, Cordero agreed to be subject to random testing for a

three-year period ending October 28, 2008.

During this time, Cordero took an unpaid leave of absence and then later resigned from his

position with the City so that he could serve a six-month term of imprisonment resulting from

violation of the conditions of his supervised release—specifically, multiple positive drug tests. Upon

his release from the federal Bureau of Prisons, Cordero sought in September of 2008 reemployment

with the City and recommenced work on October 28, 2008.



According to the defendants, this reemployment was conditioned on Cordero's submission to drug testing on demand. According to Cordero, after October 28, 2008 he was subject to drug testing only upon reasonable suspicion in accordance with the terms of the City's Employee Handbook. In spite of that, he asserts, Defendants Gilliam, Timmons, Bing, and Baker prepared and processed paperwork indicating that he was subject to random drug testing along with the City employees who held safety-sensitive jobs. Cordero was subsequently required to take a drug test on June 18, 2009. Effective June 30, 2009, Cordero's position with the City was eliminated. Cordero received severance pay.

A few months later, Cordero sought a new position with the City and passed a preemployment drug test in accordance with the terms of the Employee Handbook. The record shows that Defendant Bing informed Cordero that his reemployment was conditioned on submission to drug testing at any time. Around December 21, 2009, Cordero refused a drug test and was terminated as a result. Cordero requested that he be reinstated to his position, but his request for reemployment was denied. Cordero subsequently filed this action. The only claims properly before the court are a civil rights claim against the City for failing to train individuals regarding the implementation of its drug testing policy and a civil rights claim against Defendants Gilliam,[1] Timmons, Bing, and Baker for conspiring to deprive him of his Fourth Amendment right to be free of unreasonable searches. Additionally, Cordero purports to assert a claim pursuant to the Americans with Disabilities Act.

---

[1] Defendant Benjamin was substituted for Defendant Gilliam with regard to any official capacity claims. (See ECF No. 65.)



# DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.  The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.

**B.     Claims Based on Alleged Fourth Amendment Violation**

**1.     Defendant City of Columbia**

To prevail on any claim pursuant to § 1983, a plaintiff must show:  (1) that he or she was injured; (2) by the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States; (3) by a person acting under color of state law.  See 42 U.S.C. § 1983. With regard to municipal government defendants, American jurisprudence has long recognized that a municipality or other local government may be liable under § 1983 only if the governmental body itself subjected a person to a deprivation of federal rights or caused that person to be subjected to such deprivation.  See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 692 (1978). Local governments are responsible only for their *own* illegal acts; § 1983 provides no vicarious liability for their employees' actions.  Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (citing Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)).  Thus, a plaintiff seeking to impose liability on a local government under § 1983 must show that " 'action pursuant to official municipal policy' " caused his injury.  Connick, 131 S. Ct. at 1359 (quoting Monell, 436 U.S. at 691).  The Supreme Court has recognized that official municipal policy for which a municipality can be actually responsible under § 1983 includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 131 S. Ct. at 1359.  Additionally, the Supreme Court has held that "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Id.  However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Id.  Accordingly, to allow such a shortcoming in

training to be properly considered as an actionable policy or custom giving rise to liability under § 1983, the municipality's decision not to train must amount to " 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " Connick, 131 S. Ct. at 1359-60 (quoting Canton v. Harris, 489 U.S. at 388-89 (1989)) (alterations in original). This is " 'a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.' " Connick, 131 S. Ct. at 1360 (quoting Bd. of Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 410 (1997)). A less stringent standard would result in *de facto respondeat superior* liability. Connick, 131 S. Ct. at 1360 (citing Canton, 489 U.S. at 392). Moreover, § 1983 "does not provide plaintiffs or courts *carte blanche* to micromanage local governments throughout the United States. . . . [S]howing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability." Connick, 131 S. Ct. at 1363.

To show deliberate indifference in a failure-to-train case, a plaintiff may show that city policymakers were on actual or constructive notice that a particular omission in their training program caused city employees to violate citizens' rights but chose to retain that program. See Connick, 131 S. Ct. at 1360 (citing Bryan Cnty., 520 U.S. at 407). Such a " 'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.' " Connick, 131 S. Ct. at 1360 (quoting Canton, 489 U.S. at 395). Ordinarily, a *pattern* of similar constitutional violations by untrained employees is necessary to show deliberate indifference in a failure-to-train case. Connick, 131 S. Ct. at 1360 (citing Bryan Cnty., 520 U.S. at 409). Such a pattern can establish policymakers' " 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees' " and show conscious disregard for the consequences of their actions, thus



demonstrating the deliberate indifference necessary to trigger municipal liability. Connick, 131 S. Ct. at 1360 (quoting Bryan Cnty., 520 U.S. at 407). Without notice that the training is deficient in a particular respect, a decision maker cannot be said to have deliberately made a choice that will cause violations of protected federal rights. Connick, 131 S. Ct. at 1360. Nonetheless, "in a narrow range of circumstances," a plaintiff may show deliberate indifference even without establishing a pattern of similar constitutional violations when the unconstitutional consequences of the failure to train are "patently obvious." Connick, 131 S. Ct. at 1361 (discussing as a example of potential single-incident liability for the failure to train a hypothetical city that provides firearms to its police officers without training them on the constitutional limits of deadly force) (citing Bryan Cnty., 520 U.S. at 409 and Canton, 489 U.S. at 390).

Here, Cordero expressly bases his § 1983 claim against the City on an alleged failure to train its employees regarding the proper implementation of its drug testing policy, which Cordero asserts is contained in the Employee Handbook.[2] (See Pl.'s Mem. Opp'n Summ. J., ECF No. 92 at 22.) Cordero's case rests on the propriety of his interpretation of the City's drug testing policy, an interpretation the City contests and one that is far from clear. Contrary to Cordero's assertion, however, this dispute about whether Cordero was properly subject to on-demand drug testing does not preclude summary judgment in this matter because even accepting Cordero's interpretation for purposes of this motion, his failure-to-train theory fails. Cordero's claim for failure to train is essentially based on an alleged single incident where City employees decided, allegedly contrary to

---

[2] The parties devote substantial portions of their memoranda to the issue of whether the Employee Handbook altered Cordero's at-will employment status. Because Cordero does not assert a contract-based claim in this action, however, the handbook provisions are relevant only to the extent that they embody the policy that is the subject of Cordero's failure-to-train claim, and to the extent they may reflect that Cordero consented to the drug testing at issue.



City policy and unconstitutionally, to subject Cordero to drug testing.  Under <u>Connick</u>, the unconstitutional consequences of failing to train the City's risk manager regarding the City's drug testing policy are not so patently obvious as to give rise to municipal liability for a policy or custom. <u>Connick</u>, 131 S. Ct. at 1363-64 (rejecting municipal liability for a single incident of a prosecutor's conceded violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), that plaintiff contended resulted in a wrongful murder conviction causing him to spend eighteen years in prison, including fourteen years on death row).  Applying the analysis used by the <u>Connick</u> Court, the court concludes that Cordero must show under the applicable standard that it was highly predictable that the risk manager would misapply the drug testing policy in a manner that violated the Fourth Amendment—so predictable that failing to train the risk manager regarding proper drug testing amounted to a *conscious disregard* by the City for his Fourth Amendment rights.  <u>See</u> <u>Connick</u>, 131 S. Ct. at 1365. Cordero has failed to meet this standard.

### 2.    Individual Defendants

To establish a conspiracy under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right.  <u>Hinkle v. City of Clarksburg</u>, 81 F.3d 416, 421 (4th Cir. 1996). To establish the deprivation of his Fourth Amendment rights in this context, Cordero must show that the City, a government employer, subjected him to an unreasonable search.  <u>See</u> U.S. Const. amend. IV.  The parties agree that a drug test by a government employer is a search subject to the Fourth Amendment's proscription against unreasonableness.  <u>Skinner v. Ry. Labor Execs.'</u> <u>Ass'n</u>, 489 U.S. 602, 614-17 (1989).   Whether a search violates the Fourth Amendment's



reasonableness requirement is determined by examining the totality of the circumstances.  See id.
at 619; see also Ohio v. Robinette, 519 U.S. 33, 39 (1996).

A search conducted with consent does not violate the Fourth Amendment.  See, e.g.,
Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).  Here, the City has presented evidence from
Defendant Bing that she told Cordero that, in light of his history of drug use, his reemployment was
conditioned on what the City has characterized as "on demand" drug testing.  (Bing Dep. 53:13-15,
ECF No. 82-30 at 7.)  Cordero has not refuted this evidence, arguing only that no writing exists that
memorializes his consent.  However, he points to no legal authority indicating that the Fourth
Amendment requires written consent for a search to be reasonable.  Contra United States v.
Lattimore, 87 F.3d 647, 651 (4th Cir. 1996) (holding that "[i]t is clear, however, that a refusal to
execute a written consent form subsequent to a voluntary oral consent does not act as an effective
withdrawal of the prior oral consent.").

Even if Cordero had not in fact consented to being drug tested by the City at any time, the
individual defendants are entitled to qualified immunity.  Qualified immunity shields governmental
officials performing discretionary functions from liability for damages to the extent that their conduct
does not violate clearly established statutory or constitutional rights of which a reasonable person
would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  To resolve a qualified
immunity defense, the court must (1) determine whether the facts alleged, taken in the light most
favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2)
determine whether the right was clearly established at the time of the alleged misconduct.  Pearson
v. Callahan, 555 U.S. 223, 231-32 (2009).  Courts may address the two prongs of the qualified



immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand.  Id. at 235, 242.

In determining whether the right violated was clearly established, the court defines the right " 'in light of the specific context of the case, not as a broad general proposition.' "  Parrish v. Cleveland, 372 F.3d 294, 301 (4th Cir. 2004) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Further,

> [a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.

Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011).  In analyzing this prong, a court in this district generally must look only to case law from the United States Supreme Court, the Court of Appeals for the Fourth Circuit, and the South Carolina Supreme Court.  Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999).

Controlling case law establishes the following principles in connection with drug testing by a government employer.  First, the Fourth Amendment generally bars government officials from undertaking a search absent individualized suspicion.  Chandler v. Miller, 520 U.S. 305, 308, 313 (1997).  However, individualized suspicion toward a particular individual may not be required if the search is conducted for a "special need" beyond normal law enforcement.  Chandler, 520 U.S. at 313-14; see also Skinner, 489 U.S. at 619.  Thus, the Supreme Court has upheld random, suspicionless drug tests when " 'the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by

a requirement of individualized suspicion.' " <u>Chandler</u>, 520 U.S. at 314 (quoting <u>Skinner</u>, 489 U.S. at 624).

Here, the defendants' action in requiring Cordero to submit to a drug test in December 2009 does not fall squarely within any of the categories of drug tests addressed by the Supreme Court. No party asserts that Cordero's test was based on reasonable suspicion. However, nor was it a wholly suspicionless search such as those at issue in <u>Chandler v. Miller</u>, 520 U.S. 305 (1997), and <u>National Treasury Employees Union v. Von Raab</u>, 489 U.S. 656 (1989). Thus, the court finds for the reasons that follow that even if the defendants' actions in requiring Cordero to submit to drug testing violated the Fourth Amendment, their conduct fell within the gray areas of Fourth Amendment jurisprudence and did not transgress any bright line. <u>See</u> <u>Maciariello v. Sumner</u>, 973 F.2d 295, 298 (4th Cir. 1992) (discussing qualified immunity and stating "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines").

First, based on the unrefuted record, the defendants were entitled to rely on their good faith belief, even if erroneous, that Cordero had consented to unannounced, on-demand drug testing as a condition of being reemployed. <u>See</u>, <u>e.g.</u>, <u>Carboni v. Meldrum</u>, 949 F. Supp. 427, 437 (W.D. Va. 1996) ("A reasonable mistake of consent is no less a factual error than relying on a facially valid warrant, or erroneously searching the wrong premises, and therefore, the proper course of action for this court is granting summary judgment on qualified immunity grounds."); <u>cf.</u> <u>Carroll v. City of Westminster</u>, 233 F.3d 208, 211-12 (4th Cir. 2000) (discussing a waiver signed by the plaintiff allowing his government employer to test him for drugs "at any time, with or without cause"). Further, as noted above, no controlling precedent appears to have addressed the constitutionality of a government employer's requirement that an at-will employee who is not in a safety-sensitive

position but who has a long history of positive tests for illegal drugs be subjected to unannounced testing.  Compare Von Raab, 489 U.S. at 679 (upholding constitutionality of suspicionless drug testing of government employees who applied for promotions to positions directly involving the interdiction of illegal drugs or requiring the incumbent to carry a firearm) with Chandler, 520 U.S. at 308-22 (finding unconstitutional a state statute requiring suspicionless drug testing of candidates for public office where there was no special need to justify a search not based on individualized suspicion of wrongdoing) and Carroll, 233 F.3d at 211-12 (upholding constitutionality of covert drug testing of a urine sample provided for a medical test where the plaintiff police officer had previously signed a waiver putting him on notice that his urine could be tested for drugs at any time and where the test was based on reasonable, individualized suspicion that the officer was abusing drugs) and American Fed. of Teachers v. Kanawha Cnty. Bd. of Ed., 592 F. Supp. 2d 883, 891-905 (S.D.W. Va. 2009) (analyzing controlling precedent and concluding that the plaintiff teachers union had demonstrated a likelihood of success on the merits in challenging the constitutionality of a drug testing policy subjecting them to suspicionless random drug testing).  Here, the record unequivocally shows that Cordero was not subjected to a general policy of suspicionless testing such as those examined in Von Raab and Chandler.  Rather, because of his demonstrated repeated and recent drug use, he was required to submit to unannounced testing, even though he did not occupy a position such as those at issue in Von Raab (customs officers) and Carroll (police).  Regardless of whether this requirement violated the Fourth Amendment, controlling law does not prohibit it beyond debate.  Accordingly, the individual defendants are entitled to qualified immunity.

C.    **ADA Claim**

Cordero has failed to address this claim in his opposition memorandum or refute the City's showing that it is entitled to summary judgment on this claim.  For the reasons presented in the City's memorandum, the court finds that Cordero's ADA claim fails as a matter of law.

**RECOMMENDATION**

All of the plaintiff's claims fail as a matter of law.  The court therefore recommends that the defendants' motion for summary judgment be granted and the plaintiff's motion for a default judgment be denied.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

February 21, 2013
Columbia, South Carolina


*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).