IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Johnnie Cordero, ) | C/A No.: 3:11-cv-2502-JFA |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| The City of Columbia, South Carolina; ) | |
| Joseph H. Timmons, III, individually and in ) | |
| his official capacity as Risk Manager for the ) | |
| City of Columbia, South Carolina, a/k/a ) | |
| "Chip"; Hattie M. Bing, individually and in ) | |
| her official capacity as Deputy Director of ) | |
| the City of Columbia Department of Parks ) | |
| and Recreation; S. Allison Baker, ) | |
| individually and in his official capacity as ) | |
| Senior Assistant City Manager and Director ) | |
| of the Department of Parks and Recreation ) | |
| of the City of Columbia, South Carolina; ) | |
| Jacque Gilliam, individually; and Pamela ) | |
| Benjamin, in her official capacity as ) | |
| Director of Human Resources for the City ) | |
| of Columbia, South Carolina, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter comes before the court on Plaintiff Johnnie Cordero's Objection to the Report and Recommendation ("Report") issued by a Magistrate Judge in this case. Plaintiff filed this action pursuant to 42 U.S.C. §§ 1983 and the Americans with Disabilities Action ("ADA"), 42 U.S.C. §§ 12101, *et seq.* In her Report, the Magistrate Judge recommended that this court grant Defendants' Motion for Summary Judgment and deny Plaintiff's Motion for Default Judgment. Having reviewed the entire record, including Plaintiff's Objection, this court finds that the Magistrate Judge has fairly and accurately summarized the facts and has applied the

1

correct principles of law in her Report. Accordingly, the court adopts the Report and fully incorporates it into this order.

I.     **Factual and Procedural History**

The court has already incorporated the Magistrate Judge's Report in its entirety, but because the court will intermittently reference the facts of this case in addressing Plaintiff's objections, the court provides the facts as recited in the Report below.

> The following facts are either undisputed or are viewed in the light most favorable to Cordero, to the extent they are supported by evidence in the record. Cordero, who has a federal felony criminal conviction, has worked off and on for the City of Columbia since 2004. He was recruited through the City's Work Initiative Program, through which the City trains former criminal offenders following service of their sentences and teaches them certain job skills. Cordero was involved in a work related traffic accident on June 29, 2005. On that same date, he was required to submit to a post-accident drug test, which he failed. Cordero's employment was terminated, but following Cordero's completion of the City's requirements for reemployment, the City again hired him effective October 28, 2005. At that time, Cordero agreed to be subject to random testing for a three-year period ending October 28, 2008.
>
> During this time, Cordero took an unpaid leave of absence and then later resigned from his position with the City so that he could serve a six-month term of imprisonment resulting from violation of the conditions of his supervised release—specifically, multiple positive drug tests. Upon his release from the

2

federal Bureau of Prisons, Cordero sought in September of 2008 reemployment with the City and recommenced work on October 28, 2008.

According to the defendants, this reemployment was conditioned on Cordero's submission to drug testing on demand.  According to Cordero, after October 28, 2008 he was subject to drug testing only upon reasonable suspicion in accordance with the terms of the City's Employee Handbook.  In spite of that, he asserts, Defendants Gilliam, Timmons, Bing, and Baker prepared and processed paperwork indicating that he was subject to random drug testing along with the City employees who held safety-sensitive jobs.  Cordero was subsequently required to take a drug test on June 18, 2009.  Effective June 30, 2009, Cordero's position with the City was eliminated.  Cordero received severance pay.

A few months later, Cordero sought a new position with the City and passed a preemployment drug test in accordance with the terms of the Employee Handbook.  The record shows that Defendant Bing informed Cordero that his reemployment was conditioned on submission to drug testing at any time. Around December 21, 2009, Cordero refused a drug test and was terminated as a result.  Cordero requested that he be reinstated to his position, but his request for reemployment was denied.  Cordero subsequently filed this action.  The only claims properly before the court are a civil rights claim against the City for failing to train individuals regarding the implementation of its drug testing policy and a civil rights claim against Defendants Gilliam, Timmons, Bing, and Baker for conspiring to deprive him of his Fourth Amendment right to be free of

3

unreasonable searches. Additionally, Cordero purports to assert a claim pursuant to the Americans with Disabilities Act.

(ECF No. 98 at 2–3.)

In her Report, the Magistrate Judge recommended that this court grant Defendants' Motion for Summary Judgment and deny Plaintiff's Motion for Default Judgment. Plaintiff filed a thirty-three page document wherein Plaintiff generally objects to "each and every part" of the Report. In addition to that general objection, Plaintiff also identifies nine[1] specific objections to the Magistrate Judge's reasoning. Defendants filed a response to Plaintiff's objections on March 26, 2013.

## II.     Legal Standards

### A.     Magistrate Judge's Report and Recommendation

The Magistrate Judge made her review in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02. The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties are allowed to make a written objection to a Magistrate Judge's report within fourteen days after being served a copy of the report. 28 U.S.C. § 636(b)(1). From the objections, the court reviews *de novo* those portions of the report that have been specifically objected to, and the court is allowed to accept, reject, or modify the report in whole or in part. *Id.*

### B.     Legal Standard for Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown that "there is no genuine dispute as to any material

---

[1] The final objection purports to be "Objection #10," but it appears that Plaintiff skipped number nine when he was numbering his specific objections.

4

fact and the movant is entitled to judgment as a matter of law." The court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Summary judgment should be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Trustees of Mayland Community College*, 955 F.2d 924, 928 (4th Cir. 1992). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### III.     Discussion

#### A.     Miscellaneous Objections

In Plaintiff's first objection, he argues that he was prejudiced because the Report relied on evidence that is inadmissible under the Federal Rules of Evidence. Specifically, Cordero objects to the Report's reference to his federal criminal conviction. However, this court finds that the reference to Plaintiff's criminal conviction is relevant—it explains how he began working for the City and also why, at one point, he had to take a leave of absence from his job with the City. Additionally, the court denies Plaintiff's renewed motion to strike, as Cordero has not been prejudiced by the reference to his criminal conviction (Rule 403), nor has it been used to show his character (Rule 404) or to attack his character for truthfulness (Rule 609).

In his second objection, Plaintiff renews his motion for default judgment against Defendant Gilliam, asserting that this court should grant default judgment as there is already an entry of default against Defendant Gilliam in this case. "[A] defendant's default does not in

itself warrant the court entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *DIRECTV, Inc. v. Pernites*, 200 F. App'x 257, 258 (4th Cir. 2006). In this case, Defendant Gilliam has a meritorious defense, which has been presented to the court by the other named Defendants. Because this court finds that summary judgment is appropriate in this case, the court is constrained to deny Cordero's Motion for Default Judgment.

### B.     Objections Related to Finding of Consent

Plaintiff's third and sixth objections deal with the issue of consent. The Magistrate Judge concluded that Cordero consented to the drug tests based on a conversation between Defendant Bing and Cordero in which she informed him that his reemployment was conditioned on what the City has characterized as "on demand" drug testing. As noted by the Magistrate Judge, a search conducted with consent does not violate the Fourth Amendment. *See*, *e.g.*, *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

In Cordero's third objection, he takes issue with the Magistrate Judge's reliance on Bing's deposition testimony about that conversation. Plaintiff has filed an affidavit, which states that "[t]here were no conditions placed on my reemployment. I did not consent to any conditions at all. No conditions were discussed and none were imposed." (ECF No. 92-1 at 5–6.) Plaintiff has also submitted the transcript of the administrative hearing related to his unemployment benefits where both he and Bing testified about their conversation before he was reemployed in September 2009. When asked by the hearing officer if Bing told him during that conversation that he was "still on a random test list," Cordero responded, "I don't recall, but I will say this, I do know Ms. Bing as being very, very thorough, and having a good memory. So, I'm not . . . I'm not in a position here to dispute . . . if she says it happened, I don't . . . we had that conversation, I wouldn't dispute that." (ECF No. 93-13 at 31.) A party may not avoid summary

6

judgment by the introduction of self-serving and inconsistent testimony. As the Fourth Circuit has recognized, "a genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of [an individual's] testimony is correct." *Barwick v. Celotex Corp.*, 738 F.2d 946, 960 (1984). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* (quoting *Perma Research and Dev. Co. v. The Singer Co.*, 410 F.2d 572, 578 (2nd Cir. 1969)).

Cordero further argues that Bing did not have the authority to place conditions on his employment based on disclaimer language contained in the City's Employee Handbook. However, the handbook disclaimer merely informs employees that neither the handbook nor anyone but the City Manager can change the at-will status of an employee. It does not mean that Bing could not inform Plaintiff that he would be subject to on demand drug testing upon reemployment.

In his sixth objection, Plaintiff disputes that he consented to the drug tests. He submits that the only consent that he gave expired on October 28, 2008 (at the conclusion of the three-year period that he agreed to be subject to random testing). Plaintiff then argues that the difference between his statements and that of Bing raise an issue of credibility, which should be resolved by a jury. The court has addressed this argument above. Cordero also makes the following argument:

> In each of the cases decided by the Supreme Court on the issue of drug testing all of them required the employees to consent to drug testing in order to maintain

7

employment. But in none of the cases did the Court find that the test was valid *because* of the employee's consent.

(ECF No. 102 at 14). Plaintiff failed to specify which Supreme Court cases support his argument, but after reviewing some of the seminal Supreme Court cases pertaining to urine drug testing, the court disagrees with the proposition that those cases involved employee consent. *See*, *e.g.*, *Chandler v. Miller*, 520 U.S. 305 (1997); *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656 (1989); *Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602 (1989). In contrast, Plaintiff has admitted that he did not object to the June 2009 drug test. Though Cordero knew that his position with the City was being eliminated soon after that test, he took the test after deciding that he did not "want to cause any problems," and there is no evidence that he was forced to submit to the drug test. (See ECF No. 93-13 at 32.) As Plaintiff himself noted in his objections, consent must be "voluntarily given, and not the result of duress or coercion, express or implied." *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973). Here, Cordero admits that he voluntarily consented to the drug test in June 2009. As to the December 21, 2009 test, Cordero refused that test. Thus, his rights were not violated on that date.

Of course, a finding of consent is not essential for this court to find summary judgment appropriate in this case. Even if Plaintiff did not consent to drug testing, his claims against the City and the individual defendants still fail.

### C.     Objections Related to Claim Against the Municipal Defendant

As noted by the Magistrate Judge in her Report, local governments are responsible only for their own illegal acts; § 1983 provides no vicarious liability for their employees' actions. *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). Thus, a plaintiff seeking to impose liability on a local government under § 1983 must

8

show that "'action pursuant to official municipal policy'" caused his injury. *Id.* (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

In this case, Plaintiff has asserted a failure-to-train claim against the City. To allow a shortcoming in training to be properly considered as an actionable policy or custom giving rise to liability under § 1983, the municipality's decision not to train must amount to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* at 1359–60 (quoting *Canton v. Harris*, 489 U.S. 378, 388–89 (1989)) (alterations in original). Ordinarily, a pattern of similar constitutional violations by untrained employees is necessary to show deliberate indifference in a failure-to-train case. *Id.* at 1360 (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)). Such a pattern can establish policymakers' "'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees'" and show conscious disregard for the consequences of their actions, thus demonstrating the deliberate indifference necessary to trigger municipal liability. *Id.* (quoting *Bd. of Cnty. Comm'rs*, 520 U.S at 407). Without notice that the training is deficient in a particular respect, a decision maker cannot be said to have deliberately made a choice that will cause violations of protected federal rights. *Id.* Nonetheless, "in a narrow range of circumstances," a plaintiff may show deliberate indifference even without establishing a pattern of similar constitutional violations when the unconstitutional consequences of the failure to train are "patently obvious." *Id.* at 1361 (citing *Bd. of Cnty. Comm'rs*, 520 U.S. at 409 and *City of Canton v. Harris*, 489 U.S. 378, 390).

In light of this case law, the Magistrate Judge concluded

Cordero must show under the applicable standard that it was highly predictable that the risk manager would misapply the drug testing policy in a manner that

> violated the Fourth Amendment—so predictable that failing to train the risk manager regarding proper drug testing amounted to a conscious disregard by the City for his Fourth Amendment rights. Cordero has failed to meet this standard.

(ECF No. 98 at 8 (citations omitted).) Plaintiff asserts that the Report fails to conclude that he did not establish a prima facie case against the City, but, by concluding that there was no deliberate indifference by the City, the Magistrate Judge did just that. Cordero then argues that the Magistrate Judge should have used the standard articulated in *Canton v. Harris*, where the Supreme Court theorized a circumstance in which a municipality could be liable under § 1983 based on a single-incident of deliberate indifference. 489 U.S. at 390. However, this court finds that this case does not fit into the "'narrow range of circumstances'" described in *Canton* where a pattern of similar violations is unnecessary to show deliberate indifference. Thus, the Magistrate Judge applied the correct standard.

In Plaintiff's fifth objection he argues that he has established a pattern that shows deliberate indifference. However, this court agrees with the Magistrate Judge that Cordero has only alleged a single incident where City employees decided, allegedly contrary to City policy and unconstitutionally, to subject Cordero to drug testing. Even if Plaintiff had established that the City had violated Plaintiff's Fourth Amendment rights, he has failed to establish that the other City employees subject to on demand drug testing have had their Fourth Amendment rights violated. As such, Cordero has not shown a "pattern of similar violations that would 'establish that the policy of inaction [was] the functional equivalent of a decision by the city itself to violate the Constitution.'" *Connick*, 131 S. Ct. at 1366 (quoting *Canton*, 489 U.S. at 395).

In an attempt to show that the Defendant's drug testing policy is unconstitutional, Plaintiff baldly proclaims that the City's drug testing policy differs in a constitutionally

10

significant way from the policies of "all" other jurisdictions—he states that these other jurisdictions use consent forms and provide training for their employees. However, there is no evidence that municipalities are required to obtain written consent or to train their employees who administer the drug testing policy.

### D.     Objections Related to Claims Against the Individual Defendants

In his seventh, eighth, and tenth objections, Plaintiff raises issues related to the Magistrate Judge's finding that summary judgment was appropriate for Cordero's claims against the individual Defendants in this case. The Magistrate Judge concluded that Cordero had consented to the drug testing—thus, there could be no Fourth Amendment violation. However, the Magistrate Judge also found that even if there had been a Fourth Amendment violation, the individual Defendants are entitled to qualified immunity because their conduct fell within the gray areas of Fourth Amendment jurisprudence and did not transgress any bright line.

In his seventh objection, Plaintiff argues that he "made a prima facie showing as to conspiracy." He then sets out in detail the evidence that he has presented that supports his claim of conspiracy against Defendants Timmons, Bing, Baker, Gilliam, and Benjamin. What Plaintiff has failed to grasp is that the Magistrate Judge assumed for purposes of her Report that Plaintiff had met the elements of his § 1983 claim against the individual Defendants. Nevertheless, she found that they were entitled to qualified immunity, which shields the Defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In Plaintiff's eighth objection, he contests the Magistrate Judge's qualified immunity analysis. Primarily, Cordero asserts that the individual Defendants knew that they did not have

11

the authority to drug test the Plaintiff and that they conspired to put him on the list for on demand drug testing.  In support of this proposition, Plaintiff has submitted an email from Judy Edwards, a risk manager for the City.  In the email, Edwards asks to have Cordero placed on the list for on demand drug testing though it appears that there was some question as to whether he fell under the City's policy because his most recent employment with the City ended when Plaintiff resigned during incarceration.  Cordero attempts to draw a comparison between the Edwards email and a false affidavit, asserting that, in this case, the Defendants' qualified immunity is negated by the Edwards email just as probable cause would be negated if based on a knowingly false statement made in an affidavit.  Though creative, this comparison is not valid, as the false affidavit analysis is not applicable in this case.  The court finds that the Edwards email does not in any way cancel the individual Defendants' entitlement to qualified immunity.

In his final objection, Plaintiff argues that there is no gray area as to whether his Fourth Amendment rights were violated.  He restates the facts and summarily concludes that the individual Defendants "intentionally and conspiratorially violated plaintiff's significant constitutional rights."  (ECF No. 102 at 32.)  This court disagrees with that conclusion. Based on Supreme Court precedent in this area, which the Magistrate Judge has detailed in her Report, the court finds that the constitutionality of a government employer's requirement that an at-will employee who is not in a safety-sensitive position but who has had a long history of positive tests for illegal drugs be subjected to unannounced testing is unclear.  Thus, the individual Defendants are entitled to qualified immunity in this case.

**IV.	Conclusion**

For the foregoing reasons, this court adopts the recommendation of the Magistrate Judge. Accordingly, Plaintiff's Motion for Default Judgment is denied (ECF No. 38) and Defendants' Motion for Summary Judgment is granted (ECF No. 82).

IT IS SO ORDERED.

March 27, 2013	Joseph F. Anderson, Jr.
Columbia, South Carolina	United States District Judge